I call the case in re Custody of K.W. Minor number 519-0198. Cancel the bankruptcy. Please report, counsel. My name is Josh Reeves and I am the attorney for the appellant, Chelsea Way. We bring this appeal before you for two issues. Issue 1, the cert court's failure to make a factual finding as to appellant's unfitness prevents a determination on review that the cert court's findings was not against the manifest way of the evidence. And issue 2, appellant was deprived of her right to effective assistance of legal counsel. In regards to issue 1, the basis of this appeal is that when the trial court terminated the appellant's criminal rights on May 10, 2019, after finding the appellant unfit pursuant to 750 ILCS 50-1D, it did so without making any findings of fact. This failure precludes this court from determining whether this finding of unfitness is against the manifest way of the evidence. Essentially, this court cannot determine whether the trial court's findings of fact were against the manifest way of the evidence because there were no findings of fact ever made. The only findings made by the trial court were when it stated on the record that, quoting, as it is related to the issue of fitness as defined by the statutory parameters, it really isn't even an issue. And by the doc entry stating that the, quote, evidence was overwhelming and effectively uncontested. There is no deference owed to these findings because no deference is owed to a finding of fact that was never made. And that's citing N. Ray G.W. and N. Ray Iyada. So are we then to look at the record and make a determination de novo, but still look at the record to see what the evidence was that's in the record? We would say no, Your Honor. We believe that only the trial court judge could do that because of the credibility of witnesses and taking it as a totality. We also get into that in our second argument about the ineffective assistance of counsel, but no. Are you saying that the trial court needed to make explicit credibility findings or isn't it implicit in the court's sort of general statement? They needed to make a finding of fact. The only exception would be if the evidence was overwhelming. I forget the actual overwhelming and. Overwhelming and effectively. I can't find the standard right now, Your Honor. You can come back to it later. Yes, Your Honor. Because the lack of factual findings inherently provides appellate review, the appellate courts have repeatedly admonished trial courts to state a factual basis for their findings of unfitness. Additionally, as the court is aware, parental rights concern a fundamental liberty interest that is only obstructed in drastic circumstances. This consistent admonishment, coupled with the intrinsic nature of parental rights, will only excuse a trial court's failure to state a factual basis when the evidence is both overwhelming and undisputed. Because these rights are so fundamental, when assessing parental unfitness, the court is to focus on the parent's efforts rather than success. Progress, not perfection, is the metric. Moreover, her conduct must be examined in the context of her specific circumstances. This means that circumstances such as difficulty in obtaining transportation, poverty, actions and statements of others that hinder visitation and the need to resolve other life issues are extremely relevant in making this determination. Here, it is uncontroverted that the appellant did not make engaging in services difficult. Appellant also admitted that her employment interfered with her visitation. And moreover, the caseworkers conceded that as the recommended services of substance abuse assessment, mental health assessment, employment, housing, and parenting education, appellant had maintained employment and housing, she was not recommended for substance abuse assessment after testing negative for drugs, and had completed the first part of her mental health assessment. Again, it's appellant's progress that matters in determining whether the evidence for alleged unfitness is both overwhelming and undisputed. Accordingly, the evidence of appellant's unfitness falls well short of overwhelming and certainly was not undisputed. Generally, this means that the matter must be remanded for the trial court judge to state a factual basis for his findings. However, as stated in brief, this particular trial court judge has since retired. Because the finding of appellant unfitness requires factual findings and credibility assessments that only the circuit court judge is in the best position to make, this matter must be remanded for a new termination hearing. The credibility assessments made by the trial court are unique to that particular judge's observations and inferences and cannot be pieced together from a review of a trial transcript. The second issue we bring is that the appellant is deprived of her right to ineffective or effective assistance of the legal counsel. In order to prevail on claim for ineffective assistance of counsel, appellant is required to show that his counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability the result would have been different had there not been ineffective assistance of counsel. Appellant's appointed public defender fell below this objective standard of reasonableness. Appellant's attorney displayed a shocking lack of trial preparation and strategy. And appellant's attorney failed to apply the rules of evidence to protect her client's interest in the termination hearing. For instance, the guardian of light repeatedly was argumentative, accusatory, and hostile towards the appellant with any factual basis to dispute appellant's testimony and appellant's attorney did not object to the entirety of the termination hearing. Most importantly, appellant's attorney failed to request closing arguments or to object to lack of closing arguments in the fitness hearing or the best interest hearing. Now, although closing arguments are considered part of trial strategy, when you take it as a totality of the circumstances, it's impossible to discern any common strategy by appellant's attorney at the hearing. Appellant's attorney put on mental evidence, including zero witnesses who could have cooperated appellant's testimony as evidence of her parental fitness. A friend of the appellant was present that day at the hearing and was anticipated testifying when he was removed from the courtroom after a motion to exclude non-party witnesses. Mr. Williams could have testified and confirmed financial support for the minor child while they were staying together. And the most alarming piece of testimony came at R46 when the appellant testified, I have a witness, but I can't have witnesses. So only two logical inferences can be made from that. Either appellant's attorney improperly led appellant to believe that she wasn't allowed to have witnesses or appellant was confused regarding the effect of the motion to exclude non-party witnesses. Regardless, appellant's attorney should have consulted her about potential witnesses, especially since Mr. Williams was present that day to testify. The circuit court judge characterized the evidence as essentially uncontested. The attorney's failure to contest the state's case in any meaningful way or any meaningful manner is the only way that the evidence in this case could have possibly rose to the level of overwhelming undisputed. So if this Court determines that the evidence was indeed overwhelming and undisputed, it is only because the appellant's attorney was ineffective. So in essence, both our issues go hand in hand. Therefore, how could the Court find that the evidence was overwhelming and undisputed given these severe and prejudicial inactions by my client's previous trial court attorney? Accordingly, Justices, we would ask you to remand this case for a new hearing so the specific findings of the fact can be determined and so that the appellate court can properly review this matter. Thank you. May it please the Court. Jessica Book for the people of Illinois, the state of Illinois. I'm going to address the respondent's argument for the ineffective assistance of counsel first. It's the Strickland standard, which is a two-part standard. You first have to establish that the trial counsel's performance was deficient or below an objective standard of reasonableness and then also establish that respondent suffered prejudice. And here, there was no argument with regard to prejudice. It was a discussion of how trial counsel's trial strategies in totality were unreasonable. Why wouldn't you make a closing argument? Generally, in juvenile cases at the trial level, when it's unfitness and best interest, at least in my experience, there aren't usually closing arguments by the state or by the, I will say defendants, but by their counsel as well. The GIL also doesn't make closing arguments. Generally, if they do, they're very short. Oftentimes, it's to save on time that is spent. These hearings are usually in the afternoon or where there's a time crunch and they take a reasonable amount of time. That's just in my experience in one county. But when I saw there were no closing arguments, it didn't seem out of the ordinary for that. Generally, their left doesn't have a trial strategy, too, for them. I don't know why and I can't say why someone wouldn't argue in this instance. But once again, it's up to them to decide if they wish to or not. Also, there was a big discussion about Williams, I believe Lamar Williams is his name, being present but not testifying. And he definitely could have testified to how he provided financial support to the minor child while the minor child was left with the coworker. Now, first of all, that predates the filing of the case. It has nothing to do with defendant's progress with the case. It was all before the case was filed. And once again, there could have been many reasons to not have him testify. Maybe his testimony would have been beneficial or if it had been to her side of the case on direct, certainly on cross, things could have come out that wouldn't be beneficial. So once again, it's his trial strategy, or I mean his female trial counsel, it was her trial strategy to determine whether or not she wanted to put him up there to be ripped apart by the GAO and the state if that was a possibility. And it's also very typical to exclude witnesses when there's these hearings. So that in and of itself, arguing for that or against that, it's very common to exclude witnesses at juvenile hearings. Usually it's the CASA workers or the Luther Child Family Services that are allowed in the courtroom because they're the people that work with foster parents for the child. What would you point to us, the court, to argue that this evidence was overwhelming? I guess the judge put it uncontested. There was so much evidence, not only the testimony at the fitness hearing, but also going back and looking at all the CASA reports and the Lutheran Child Family Services reports. She, from the time the case was filed in January of 2018 to the time when the fitness hearing was, she had barely any visitation with her child. We're talking about, going through the record, I believe there was four visits that she actually had with her child. The three visits were between March and May of 2018 where they were actually in-home visits. They were April 5th, April 12th, and April 25th of 2018. Then on, it was sometime in March, I believe it was March 10th, was the next scheduled visit and the caseworker showed up and the respondent did not answer the door. They waited for 45 minutes. They tried to get a hold of her and they were not able to get a hold of her. So basically they brought her poor kid to see the mom and the mom didn't even show up. It was at her residence, so it wasn't even like she had to meet them somewhere. They brought the child to her. So looking at that, it's definitely, definitely uncontested that she didn't take the time to visit. The only other visit she had was after she had requested the trial court for an extension of time to show progress after the case had been pending for over a year. She had one after-court visit, I believe it was February 1st, 2019. And the caseworker actually walked the child out to respondent and made notes that respondent seemed to not know how to interact with the child, that respondent's mother was there and seemed to interact and the child got along with respondent's mother more so. It was mother or some family member more so than even respondent did. So with regard to visitation, she had none. She was supposed to find a job, find housing, do the substance abuse assessment, do parenting classes. She had done nothing aside from keeping a on and off position at Burger King, and that was also contained in the records. She had done nothing to show any progress until she was given the extension of time by the court and then she completed the substance abuse and that was it. And she actually didn't have to go to any classes because she tested negative. So had that been the case and she wasn't using drugs at all, that would have been a very easy thing to knock out right at the beginning rather than waiting for over a year. But with regard to the parenting classes, she started the procedure, but she never met with a required therapist. So she never completed that. No visitation. The housing wasn't completed because she had found housing, but at one point in time it was found not suitable because the caseworker couldn't even walk through the house. There were dogs and other children and they said they couldn't find it suitable because they couldn't get through the house. Then later on, I believe, they were able to say it was suitable, except she was required to meet with, I think it was Addis Home, and when they tried to contact her, she hung up on them or they were otherwise unable to get to her. Her voice mailbox was full and everything. So she never completed the housing requirement either. She was trying to, I believe, fit all that in in the three months that she had the continuance and she wasn't able to complete it. She was scheduled for visitation after she was given the continuance as well, and I believe it was, yes, they were scheduled on April 2nd, April 8th, and April 15th of 2019. And once again, this was after the judge had basically said, this is your last chance, this is your continuance. She canceled the April 2nd, April 8th one. She said she was ill for one and then had a job interview for the other one. And then April 15th, she was supposed to confirm that one by the afternoon or I think 6 o'clock on April 14th, and she never called. So they considered it a no-call, no-show. So it was scheduled, but she did not confirm that she could do it, but she did not let them know one way or another that she could. So I think the court was looking at all of that evidence. The defendant, when she testified, she couldn't remember her child's birthday. She was over two years off. She said that her son, KW, was two and that, I'm not quite sure, I'll go by memory, that her son was two and that his date of birth was January 27th, 2015. And I think the GAO was asking that question. And then the GAO, would you be surprised to know that his actual date of birth was July 25th, 2017? And she said, well, she just forgot because some parents just forget their kids' birthdays. And this was all testimony at the fitness hearing. So it's things like that. All of the witnesses for the state testified. She made no progress. One of them said that she believes everyone in this case cared more about the child than the respondent cared about her child. And then I do want to point out, and granted, when the trial court was making the ruling with regard to fitness, that they did not elaborate, that they just basically said the state met their burden of proof by clear and convincing evidence. However, later on, when he was discussing the best interest, he also said, I think this was in the record, page 73 and 74, he went over and said, at the next hearing, after you had continued, after I continued it, you had no visits with the minor child, caseworker noted the mother had completed mental health and substance assessments, but no further action was taken. Then he goes on, on April 22nd, 2019, the caseworker reported that mother's last three visits were canceled by her, and she had no visitation with the minor child, and she had yet to get appropriate housing. And then the trial court ended by saying, I'm not saying you're a bad person, this has to do with your child, but this process has been going on for a period which is close to two years, and we are no closer for you to get to a state of permanency or engage substantially in your services than where we were when we began. And I believe that speaks a lot to the reasoning that goes behind the unfitness, as well as the best interest of the child. So, we believe that despite providing a strict finding of fact for the logic in finding that the defendant was unfit, that it's not a strict compliance issue, it's more, I think it comes into play when the evidence is so close that you guys need to be able to understand what the trial judge is ruling on, such as credibility of witnesses. And that's not the case here, the evidence is not close at all. And also, defense counsel did not address the prejudice or say that the defendant was at all prejudiced. And that's mostly because the evidence was so plentiful that even if trial counsel had allowed Williams to testify or made a closing argument, it would not have made a difference on the outcome of what the trial court determined. So, the state's asking that you affirm the trial court's finding of unfitness of the respondent. Thank you. Thank you. Rebella? Here you are. In regards to counsel's argument towards the ineffective assistance of counsel, us not meeting the burden or that this was all part of a trial strategy, that she could call witnesses, but if you look at, she called no witnesses, she did no closing statement, she barely asked any questions, and she made zero objections. In essence, she was just a warm body sitting next to my client. My client would have done just as well being pro se at that hearing. Mr. Williams was there. He co-testified in regards to the financial aspect and apparently our client had lived with Mr. Williams for a period of time. Yes, she is. She's saying that wouldn't be relevant, but it wouldn't be part of the assessments or anything of that nature. But neither would knowing the child's birthday. Ms. White had several different children. She may have just mixed up one of the other kids' birthdays. So while Mr. Williams' testimony may have not been the most important, it was important in the fact that he could have answered some questions in regards to her history and where she had been, where the kid was living, things of that nature, and financial issues. Now, you mentioned the birthday. Was the mom off two and a half years? Yes, and Judge, I wasn't present at the hearing. She has other children. It may have been one of the other children's birthdays. I don't know what was in her state of mind. Although, I don't think that is one of the issues that goes towards her progress towards any of her services. If the evidence was overwhelming, the trial court judge should have made findings to the fact to that regard. But he didn't. The hearing was contested. She had had some visits. They're saying it wasn't many. But she also said she was ill. She had a job interview of one. That is one of her services that she has to complete was to be employed. Said she eventually got suitable housing. But they're saying this was after an extension of time by the court to allow her to try to make progress. And she had made some progress. She had completed her substance abuse. She had done her mental health assessment, or at least the first part. She had obtained employment, and she had obtained suitable housing. She had obtained housing and said it wasn't suitable, and then it became suitable. The state is basically saying that the argument that she had made, she had made substantial progress, but that's not what we have to look at. She didn't have to be perfect. She had to make progress towards this end-all goal. And since we would argue that by completing some of these services, that's overcome as the overwhelming standard that they're arguing exists. I'm a bit confused. I mean, your issues on appeal involve us not having a formal record to make a ruling because the trial court didn't make factual findings, but you're arguing all the factual findings that were made. Are you conceding that we don't have the ability to make this determination? Or am I just reading this wrong? No. Our brief argument is what we are arguing, that the only, that this court cannot make findings, if I can find the... I mean, the issue presented for review in your brief is whether the lack of factual findings by the circuit court precludes review as to fitness based on the appellant's interest in Kimon, and then whether the appellant received ineffective assistance of counsel is issue two. I'm not hearing any argument with regard to the lack of factual findings precluding us from hearing anything. I'm hearing what all the factual findings were. So I'm just asking, are we supposed to decide this now based on the factual findings that were made? Judge, I think what we're trying to argue is that there were facts in the case that would make it not overwhelming, which is what this court would need in order to not send it back, essentially. We're saying that he didn't make any factual findings after hearing. He just said, oh, it's overwhelming and uncontested. We're saying it was absolutely contested, and there were facts that if he was going to determine that it was overwhelming, he shouldn't have made those facts. I see. Thank you. Thank you, counsel, for your arguments. The court will take this matter under advisement when there is a decision due for it.